IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria, Virginia

| | |
|---|---|
| Mary Louise Reynolds, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:08-cv-983-TRJ |
| David Fretz, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

In this diversity action, removed from Virginia's state courts, plaintiff seeks to set aside an arbitration award rendered and confirmed in a state court in Texas. The matter is before the court on cross motions for summary judgment (docket nos. 25, 26). As discussed below, the court will grant defendant's motion and deny plaintiff's motion.

**JURISDICTION**

This court has jurisdiction under 28 U.S.C. § 1332(a) because diversity of citizenship exists between plaintiff and defendant and the amount in controversy exceeds $75,000.00. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this district.

## STANDARD OF REVIEW

A motion for summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) . *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The court must make all reasonable inferences in favor of the non-moving party, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Mary Louise Reynolds ("Reynolds"), and defendant, David Fretz ("Fretz"), are the daughter and son of Mable Elyza Griswald Fretz ("Mable Fretz"). Docket no. 25, p. 4. On January 26, 1983, these three parties entered into a trust agreement. Docket no. 25-2, Exhibit 1, p. 2. The trust agreement provided that Reynolds and Fretz were to serve as co-trustees of the trust, and that they were to distribute the net income and principal of the trust for the benefit of Mable Fretz during her lifetime. Docket no. 25-2, Exhibit 1, p. 3. The corpus of the trust included, among other things, real property located in Oklahoma and Texas and an oil and gas royalty in Oklahoma. Docket no. 25-2, Exhibit 1, p. 1. The trust agreement provided that upon Mable Fretz's death the remaining assets in the trust be divided equally between Fretz and Reynolds. Docket no. 25-2, Exhibit 1, p. 5.

The trust agreement contained an arbitration provision which provided:

The trustees shall refer all matter in difference between them to the
determination and award of two arbitrators, one chosen by each of the
parties, who acting unanimously or by majority vote and with such third

> person or they may appoint in making award, which shall be final and
> binding on all third parties, the trustor, the trustees and their heirs,
> executor, administrators and assigns.

Docket no. 25-2, Exhibit 1, p. 5. On August 10, 1997, Mable Fretz died. Thereafter, a disagreement regarding the trust assets arose between Fretz and Reynolds.

**A.  The 2001 Lawsuit and 2002 Judgment**

In August of 2001, Fretz brought suit against Reynolds in the 73rd Judicial District Court in Bexar County, Texas, setting forth several causes of action. Docket no. 25, p. 4. Reynolds removed that action to the United States District Court for the Western District of Texas. *Id*. Fretz then filed a motion to compel arbitration under the trust agreement's arbitration provision. Reynolds countered with a motion to dismiss the case for lack of personal jurisdiction, which was granted. *Id*. The judgment of the federal court was filed on September 23, 2002. Docket no. 25-2, Exhibit 2, p. 6.

**B.  The 2002 Lawsuit and Judgment and the Court of Appeals Affirmation**

Three days after the United States District Court for the Western District of Texas dismissed Fretz's case, he filed another suit in the 285th Judicial District Court of Bexar County, Texas. Docket no. 25, p. 4. Reynolds attempted to remove that case to the federal court, but that court remanded the case to state court because the amount in controversy did not exceed $75,000.00. Docket no. 27-5, p. 10-11. Thereafter, the state court dismissed Fretz's petition for lack of personal jurisdiction over Reynolds. Docket no. 25, p. 5. The Court of Appeals, Fourth Court of Appeals, in Texas upheld the district court's finding. Docket no. 25-2, Exhibit 4.

C.   **The Arbitration Award**

After the ruling from the Texas Court of Appeals, Fretz submitted to Texas arbitrator Bernard Buecker a Complaint in Arbitration and served a copy of that document on Reynolds. Reynolds received the Complaint in Arbitration on October 3, 2005. Docket no. 25-2, Exhibit 5 p. 21 ¶ 2. Reynolds, through her attorney, filed an answering statement on October 22, 2005, through registered mail. Docket no. 25-2, Exhibit 5 ¶ 3. The answering statement submitted various procedural and substantive issues for the arbitrator's determination. *Id*.

The arbitrator issued an opinion in favor of Fretz and against Reynolds on October 31, 2006. Docket no. 27-4 ¶ 5. Reynolds filed a motion for rehearing with the arbitrator and a rehearing was held on December 21, 2006. Docket no. 27-4 ¶ 6. After considering all of the materials submitted by both parties, the arbitrator entered a final award on April 26, 2007, again in favor of Fretz and against Reynolds. After offsets for the value of Reynolds's one-quarter interest in various properties in Oklahoma and Texas, the arbitrator awarded Fretz $33,988.00, plus adjusted interests in those properties, a constructive trust in favor of Fretz in a condominium in Oakton, Virginia, owned by Reynolds, and a requirement that Reynolds produce their mother's will to Fretz.

D.   **The 2007 Lawsuit and 2008 Federal Court Judgment**

In June of 2007, Reynolds filed "Defendant's Motion to Re-Open Judgment and for Injunctive Relief" in the United States District Court for the Western District of Texas, seeking to use the 2002 federal judgment to vacate the arbitration award and enjoin Fretz from filing a lawsuit to confirm and enforce the award. Docket no. 27-8. Specifically,

Reynolds asked the court to enforce its 2002 judgment that it did not have personal jurisdiction over her in 2002 and set aside the arbitration award rendered five years later in 2007. *Id.* The matter was referred to a magistrate judge for a report and recommendation. The magistrate judge found that Reynolds, by filing the lawsuit, conceded the federal court's jurisdiction over her, as the court "would appear to lack the authority to grant any relief without both subject matter and personal jurisdiction over the dispute and the parties." Docket no. 27-5 p. 16-17. In addition, the magistrate judge found that Reynolds offered no justification for re-opening the judgment, and recommended to the district judge that her request for relief be denied. The district judge accepted the magistrate judge's recommendation and entered judgment in favor of Fretz on February 27, 2008. Docket no. 27-9.

**E.     The Texas Default Judgment**

On June 20, 2008, Fretz filed suit in the 45th Judicial District Court of Bexar County, Texas seeking to confirm the arbitration award. Docket no. 27-4. Process was issued to the Texas Secretary of State as agent for service of process for Reynolds pursuant to Tex. Civ Practice & Rem. Code § 17.044. *Id*. at p. 1. On August 13, 2008, the Texas Secretary of State issued a certificate of service stating that a copy of the Citation (summons) and a copy of Fretz's pleadings in the Texas State Court Lawsuit were received by the Secretary of State, and that a copy was forwarded on August 6, 2008, by Certified Mail return receipt requested to Reynolds at her address in Virginia. Docket no. 27, p. 2. The return receipt was received by the Texas Secretary of State on August 9, 2008, bearing Reynolds's signature. *Id*.

5

Reynolds did not file any responsive pleading or motion, and the Texas state court entered a default judgment against her confirming the arbitration award. Docket no. 27-3. The default judgment became a final judgment on September 2, 2008. *Id*. Reynolds did not appeal, and did not file a motion for a new trial or a motion to modify or vacate the judgment within the time limits prescribed by the Texas Rules of Civil Procedure. Docket no. 27, p. 4.

**F.    The Present Action**

On August 21, 2007, while Reynolds's suit to set aside the arbitration award was pending in the federal court in Texas, she filed "Defendant's Motion and Application to Vacate an Arbitration Award" in the Circuit Court for Fairfax County, Virginia. However, she did not serve Fretz with process in this Virginia lawsuit until almost a year later on August 18, 2008, after she had received, but not acted on, the process from Texas that would shortly result in the default judgment confirming the arbitration award.

On September 22, 2008, Fretz removed the Virginia state court action to this court asserting diversity jurisdiction.

In the present action, Reynolds asks this court to vacate the Texas arbitration award because the arbitrator did not have personal jurisdiction over Reynolds to render an award against her. She also states that the arbitration award was improper, claiming *inter alia* that no valid arbitration agreement existed between the parties and that she did not receive proper service of the Complaint in Arbitration.

**ANALYSIS**

Applying the principles of preclusion law, this court finds that the issues raised by Reynolds in this proceeding are precluded by the Texas state court's default judgment. In so finding, this court first notes that it is obligated to give the Texas state court default judgment the same preclusive effect to which it would be entitled under Texas law. *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.").

Under Texas law, the doctrine of collateral estoppel, otherwise known as issue preclusion, bars re-litigation of the issues resolved in a prior action if: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the party against whom the doctrine is asserted was a party in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W. 2d 796, 801-02 (Tex. 1994). *See Reliance Capital, Inc. v. Hmaidan*, 2009 Tex. App. LEXIS 3283 (Tex. App. May 13, 2009).

Here, the relief requested by Reynolds, that is, to vacate the Texas arbitration award, turns on two issues already raised, and conclusively determined, in the Texas state court: whether there was personal jurisdiction over Reynolds in the Texas proceedings; and whether the arbitration and the subsequent award was procedurally and substantively sound. As discussed below, the doctrine of collateral estoppel operates to bar Reynolds from re-litigating these issues in this court.

**1.     Fully and Fairly Litigated**

Under Texas law, "full and fair" litigation does not require active courtroom confrontation. *State Farm Fire and Casualty Co. v. Fullerton*, 118 F.3d 374, 382 (5th Cir. 1997) (citing *Mendez v. Haynes Brinkley & Co.*, 705 S.W. 2d 242 (Tex. App. 1986). On the contrary, all that is necessary for collateral estoppel purposes is that the issue was raised, by pleading or otherwise, was submitted for determination, and actually determined. *Rexrode v. Bazar*, 937 S.W. 2d 614, 617 (Tex App.1997); *see Jones v. First Bank of Anson*, 846 S.W. 2d 107, 110 (Tex. App.1992) (holding that a default judgment can be used to assert res judicata).

**A.     Personal Jurisdiction Issue**

The personal jurisdiction issue presented in this court was raised in Texas state court, submitted for that court's determination, and actually determined by that court. Indeed, Fretz's pleading raised the issue of personal jurisdiction, as it states that Reynolds had traveled to Texas to maintain the Texas real property which was part of the corpus of the trust agreement. Docket no. 27-4 p. 2. Further, the pleading states that Reynolds has incurred real property tax on the property in Texas, had contracted to sell the real property in Texas to Fretz, and had breached the contract to sell the real property in Texas. *Id*. Moreover, Fretz's pleading pointed out that the United States District Court for the Western District of Texas had found that Reynolds, by filing her motion to re-open the 2002 judgment and vacate the arbitration award, submitted to the court's jurisdiction over her person. *Id*. Fretz's pleading raised the personal jurisdiction issue and submitted it for determination on June 20, 2008. *Id*. at p. 1.

8

On September 2, 2008, the Texas state court issued a final judgment in favor of Fretz and against Reynolds. In that judgment, the Texas court expressly found that it had jurisdiction over the person of Reynolds and the subject matter of the suit and that Reynolds had personally submitted to the jurisdiction of Texas courts by her conduct in Texas. Docket no. 27-3 p. 2, 5. The state court also found that Fretz's request to confirm the award was governed by the Texas Arbitration Act, which states that "[t]he making of an agreement described by Section 171.001 that provides for or authorizes an arbitration in this state and to which that section applies confers jurisdiction on the court to enforce the agreement and to render judgment on an award under this chapter." The court also noted that Reynolds filed a motion to re-open the 2002 judgment and vacate the arbitration award in the federal court in Texas and that motion was denied and no appeal was taken.

Accordingly, the issue of personal jurisdiction was raised, submitted for determination, and actually determined in the Texas state court proceeding according to Texas law. *Rexrode*, 937 S.W. 2d at 617.

### B.    Soundness of Award Issue

Likewise, the procedural and substantive soundness of the arbitration and the subsequent award was raised in Texas state court, submitted for that court's determination, and actually determined by that court. Clearly, Fretz's pleading raised the issue with the court. Indeed, the pleading asserts that:

> all issues related to the enforceability of the arbitration agreement and the procedural aspects of the litigation, including defendant's waiver of her right to appoint an arbitrator and her consent to proceed using one arbitrator, were presented to the arbitrator.

9

Docket no. 27-4 ¶ 5. Further, the pleading states that after the arbitrator issued his initial opinion on October 31, 2006, Reynolds filed a motion for rehearing. The arbitrator granted that motion, held a rehearing, and filed his final opinion against Reynolds, in favor of Fretz, on April 26, 2007. Clearly, the issue regarding the procedural and substantive soundness of the arbitration and the subsequent award was raised in the State court default judgment proceedings and was submitted for determination when Fretz filed his petition on June 20, 2008.

After the issue was submitted for determination, the Texas state court found that Reynolds, by failing to appear or respond to Fretz's lawsuit, admitted all of the allegations contained in Fretz's pleading, including the procedural and substantive soundness of the arbitration award. Additionally, the Texas state court found "that the Texas Arbitration Act governs the arbitration confirmed herein [and] Texas law governs the substantive and procedural law of the arbitration and this application to confirm the arbitration award filed in this cause . . ." Docket no. 27-4 p. 5. Accordingly, the issue regarding the procedural and substantive soundness of the arbitration award raised in this action was previously raised in Texas state court, submitted for that court's determination, and actually determined by that court in accordance with Texas law. These findings are binding on this court.

2. **Facts Essential to the Judgment in the Texas Default Proceeding**

   A. **Personal Jurisdiction Issue**

   Having found that both issues presented in this action were fully and fairly litigated in Texas state court, this court finds that the facts stated by Fretz in his pleading were

essential to the Texas state court's finding that it had personal jurisdiction over Reynolds to confirm the award. First, the pleading points out that the federal court in Texas found that Reynolds has conceded the jurisdiction of the Texas courts by filing a motion to re-open the 2002 judgment and vacate the arbitration award in the United States District Court for the Western District of Texas. Docket no. 27-4, p. 2. In its judgment, the Texas state court expressly noted that Reynolds's motion was denied and no appeal was taken. Docket no. 27-3, p. 3. Second, Fretz's pleading states that the corpus of the trust was located in Texas, that Reynolds was incurring Texas tax liability on the property, that Reynolds had contracted to sell the Texas property, and that Reynolds breached the contract to sell the Texas property. Docket no. 27-4, p. 2. As a result, the Texas state court considered these facts that were essential to its finding to that Reynolds "has personally submitted to the jurisdiction of Texas Courts by her conduct in Texas" and accordingly entered judgment. Docket no. 27-3 p. 4.

### B. Soundness of Award Issue

Similarly, the facts stated by Fretz in his pleading were essential to the Texas state court's confirmation of the arbitration award. Indeed, Fretz's pleading alleged that all issues regarding the enforceability of the arbitration agreement and the procedural aspects of the arbitration were submitted to the arbitrator and after consideration the arbitrator rendered an award against Reynolds. Docket no. 27-4 ¶ 5. It is clear from the Texas judgment that the Texas court found that Reynolds admitted these allegations by failing to respond to the lawsuit, despite being properly served. Docket no. 27-3 p. 2. Moreover, Fretz submitted the arbitration award as an attachment to his pleading for the court's

11

review. Docket no. 27-4. As a result, the state court used its own independent review of the arbitration award and the allegations of the pleading admitted by Reynolds to find that the arbitration and the subsequent award were substantively and procedurally sound, that the Texas Arbitration Act governed the arbitration, and ultimately that the award be confirmed.

**3.     Reynolds was a Party in the Texas Default Judgment Action**

Finally, the parties in the case before this court are the same parties in the Texas proceedings. Reynolds and Fretz were the named parties in both the arbitration proceedings and the Texas state court action to confirm the arbitration award. Docket nos. 27-3, 27-4.

As a result, the issues of personal jurisdiction and the procedural and substantive soundness of the arbitration award were conclusively determined by the Texas court in its final judgment, after both parties were given the opportunity to litigate the facts underlying the issues and necessary for the state court's determination. Accordingly, the doctrine of collateral estoppel precludes Reynolds from re-litigating those issues in this action.

## CONCLUSION

While Reynolds argues at length that Texas courts have no personal jurisdiction over her and that the arbitration award was improper, the proper forum to bring such arguments was in the Texas state court. Reynolds was given a full opportunity to litigate the soundness of the award and the personal jurisdiction issue as she was properly served with Fretz's lawsuit in the Texas state court. That court decided those issues against her. For the reasons discussed above, this court is precluded from considering those issues

now. The court finds that plaintiff has presented no genuine issue of material fact to be decided, and defendant is entitled to summary judgment. Accordingly, summary judgment is granted in favor of defendant, and an appropriate order will issue.

_____/s/_____
Thomas Rawles Jones, Jr.
United States Magistrate Judge

Alexandria, Virginia
January 27, 2010